Barbara L. Hull, #011890
Attorney at Law
77 East Columbus Street
Suite 201
Phoenix, Arizona 85012
(602)412-5800
BarbaraHullLaw@gmail.com
Attorney for Anthony Espinosa Gonzales

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) Case No. 2:17-cr-01311-PHX-DGC |
| Plaintiff, | ) |
| | ) DEFENDANT'S MOTION TO |
| | ) COMPEL DISCOVERY; PRECLUDE |
| | ) CERTAIN EVIDENCE |
| vs. | ) |
| | ) EVIDENTIARY HEARING |
| Anthony Espinosa Gonzales, | ) REQUESTED[1] |
| | ) |
| Defendant. | ) |
| | ) |

Based upon the constitutional protections of Due Process and Fair Trial, *Brady v. Maryland*, Rule 16, Fed.R.Crim. Proc., and the authorities cited herein, Defendant Anthony Gonzales, by and through counsel undersigned, hereby moves that this Court enter an order compelling the government to disclose all discovery requested relating to the computer program "Torrential Downpour" utilized by investigators in this matter. The information demanded includes user manuals, operation manuals, instruction manuals, documentation help or other technical manuals in possession of the government and/or its investigators, and an installable

---

[1] Defense counsel is out of the office the month of July. For scheduling purposes she asks that she be permitted to, upon her return, either file a Reply or notify the Court that she does not intend to file a Reply.

copy of the program, all of which are required for Mr. Gonzales to conduct industry-standard testing and validation and to prepare a due process defense. This motion is supported by the following Memorandum of Points and Authorities.

Respectfully submitted this 28th day of June, 2018.

__s/ Barbara L. Hull_____
Barbara Hull, Attorney for Mr. Gonzales

## MEMORANDUM OF POINTS AND AUTHORITIES

Introduction

Types of Data at Issue:

There are basically three types of data at issue in this case. First, there is the evidence that is either shared or affirmatively available for sharing. This is the type of evidence underlying the counts regarding distribution, namely Counts One through Eight. Not one of the items alleged in Counts One through Nine were identified on any of the evidence items seized from Mr. Gonzales. None were identified by either the government or the defense forensic examinations. Without the requested items, the defense is unable to defend the distribution charges.

The next type of data is that which exists on Mr. Gonzales' computer that is not available for sharing. This information is in allocated space, but outside the public domain.

Then there is deleted information, or that information in what is called unallocated space. This is information that has been affirmatively deleted from the computer, but may be accessed only forensically. This information is also outside the public domain.

Software Used and Process Followed:

"Torrential Downpour" is a law enforcement software that runs 24/7 on the internet in search of known hash values, or identifiers, purportedly attached to known child pornography.  The software then identifies an IP address where it claims that pornography is located.  The government then uses this information to obtain a search warrant for the physical address related to that IP address.

Through research and investigation, the defense has obtained information indicating that this software may falsely identify files that do not exist on a suspect computer and that this software reaches beyond what exists in the public domain. This false identification is evidenced in this case, as set forth below.

Despite this overreaching by its software and awareness of the overreach, the government uses the information obtained by Torrential Downpour to prepare an affidavit in support of search warrant, knowing the software is demonstrably flawed and produces information obtained *outside and beyond* the public domain, thereby constituting a warrantless search in violation of the Fourth Amendment.  In other words, the Affidavit in Support of Search Warrant contains either false information or a material omission of this important functional flaw.

Once the search warrant was executed in this case, a computer and a tablet were seized.  Upon forensic examination by the government, and also upon examination by the defense expert, not one of the items Torrential Downpour identified at the IP address were identified on either Mr. Gonzales' computer or tablet.  These hash values identified by Torrential Downpour, which are the eight items listed in Counts One through Eight of the Indictment, will be referenced here as "Eight Indicted Items."

Of significance is that the government alleges that the Eight Indicted Items, although not located by either the government or defense examinations, constitute

the distribution charges contained in Counts One through Eight of the Indictment. The defense here respectfully underscores that the government has no evidence that Mr. Gonzales either actively or passively shared these items or sent them to anyone.  The distribution counts are based solely upon the government's assertion that, because Torrential Downpour identified those Eight Indicted Items --  that cannot be identified anywhere on either the computer or tablet -- Mr. Gonzales is guilty of distributing those eight items of pornography.

And the one count of possession is clearly fruit of the poisonous tree, because, but for the fourth amendment violation occasioned by Torrential Downpour, neither the computer nor the tablet would have been seized, and no evidence from either would have been obtained or could be used as evidence against Mr. Gonzales.

The government refuses to allow the defense the tools it needs to conduct a due process investigation of this software in order to defend this case.

Factual Background

Defendant has been charged by Indictment with Eight Counts of Distribution of Child Pornography and One Count of Possession of Child Pornography.

From December 13, 2016 to January 9, 2017, Special Agent Jimmie John Daniels of the Phoenix Division of the Federal Bureau of Investigation conducted an online undercover session on the BitTorrent Network.  Torrential Downpour is the name of law enforcement's proprietary software that runs on the BitTorrent network. This law enforcement software detected that an IP address (later determined to be associated with Defendant's address) "transmitted child pornography via the Internet."  See **Exhibit A**; Search Warrant Affidavit.

Utilizing Torrential Downpour, Agent Daniels was able to directly connect to Defendant's computer. While connected, Agent Daniels alleges that he could view several files of suspected child pornography that were either partially downloaded or fully downloaded from the suspect computer.

Based on Agent Daniels' investigation using Torrential Downpour, he applied for and received a search warrant in this Court on or about January 31, 2017. **Exhibit B**; Search Warrant. Nearly one year after the search of Defendant's residence, the Defendant was charged.

On February 16, 2017, Agent Daniels conducted a forensic examination on the items seized from Mr. Gonzales. This examination did not identify any of the items listed in Count One through Eight. See **Exhibit F**; February 16, 2017 report of Agent Daniels.

On May 3, 2018, undersigned counsel requested from the assigned AUSA information pertaining to the software utilized by Agent Daniels to conduct his online investigation. See **Exhibit C**, Letter to AUSAs Brett Day and Gayle Helart, dated 5/3/18. The request essentially included the name of the program, the registered users during December of 2016 and January of 2017, and user manuals, operation manuals, instruction manuals, documentation help or other technical manuals in possession of the investigators.

That same day, the Government responded that while they would provide the name of the search program and its registered user, namely Agent Daniels, but they would not turn over any materials involving the use or operation of the program under the belief that such material is law enforcement sensitive *and not material to the defense.* See **Exhibit D**, Letter to Defense Counsel, dated 5/3/18.

After discussing the case with Defendant's retained expert, Defense Counsel now additionally requests a copy of the Torrential Downpour (version 2.2.1) that Agent Daniels utilized to perform his search of Defendant's computer. As stated in the attached affidavit, an analysis of the program is the only way to ensure that the automated operating software which forms the entire basis of the search warrant, and of Counts One through Eight, was functioning correctly on the dates in question. See **Exhibit E**; Declaration of Tami Loehrs, ¶¶ 11-16.

<u>SUMMARY OF ARGUMENT</u>

The defense posits essentially three arguments.

The first is that Torrential Downpour searches beyond the public domain, essentially hacks computers searching for the suspect hash values, and therefore conducts a warrantless search in violation of the Fourth Amendment. And either this case is the very first time the government has ever heard of this flaw in its software, or it is not the first time. If it is not the first time it has ever heard of this flaw[2], then the government's submission of an Affidavit In Support of Search Warrant without informing the judicial officer of this flaw, or worse alleging the software and its findings are reliable and the software does not reach beyond the public domain, constitutes at least bad faith or worse. In either event, if the defense examination of this software confirms this unconstitutional overreach, then any evidence obtained as a result of this constitutional violation must be suppressed.

---

[2] See, e.g., United States v.O'Hara, Case No. 16-CR-00734, Northern District of Illinois, Eastern Division, where this issue was raised by the defense regarding Torrential Downpour, the same law enforcement software used in this case.

The second argument relates to the government's allegations of distribution. The distribution counts are based entirely upon what Torrential Downpour claimed either exists or existed on Mr. Gonzales' computer.  These allegations are based upon the mere fact that, because the government, utilizing Torrential Downpour, was able to digitally reach, or hack, into his computer and identify these hash values, that Mr. Gonzales thereby "distributed" child pornography.  This places Torrential Downpour and the material demanded here directly within the scope of *Brady* and Rule 16, and its disclosure is constitutionally mandated.

The third argument is that the government must be prohibited from claiming law enforcement privilege to this software.  There exists a publicly available form of the software that has been examined, so the basic workings of the software are no secret.  It is demonstrated that the software functions 24/7 searching for certain suspect hash values.  What is secret, and what the government claims is privileged, is that function of the software that evidences *where* the software locates the hash values.  If the hash values of Counts One through Eight are not located on either the computer or tablet in the public domain, then its hacking is violative of the Fourth Amendment.  And, more offensively, if the hash values are located outside the public domain and, worse, in unallocated or deleted space, Mr. Gonzales is not guilty of sharing what this software had to hack to find.

## LEGAL ARGUMENT

Pursuant to Federal Rule of Criminal Procedure 16, as well as *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), the defense submits that the requested discovery is material to the defense of this case.

The use of Torrential Downpour during the investigation not only forms the basis of the search warrant, but the entire Indictment.  The Government must present evidence in its case in chief regarding the investigation of the charges. This puts directly at issue the use of Torrential Downpour to obtain access to the Defendant's computer.

As seen from the attached Affidavit of Tami Loehrs, Ms. Loehrs conducted a forensic examination on the computer seized from Mr. Gonzales and was unable to find on his computer any of the files identified by the government in Counts One through Eight.  The alleged files do not exist on that computer or on the tablet seized.

The requested material is not protected by any law enforcement privilege. Defendant's right to defend against the serious charges in this matter overcomes any asserted law enforcement privilege.  Moreover, any order for disclosure can, if the Court deems it necessary, include appropriate protective measures that would limit the conditions under which Torrential Downpour is reviewed, and would prohibit the dissemination of potential proprietary information beyond the confines of the immediate legal proceedings against Defendant.

Defendant's request is not overbroad and is tailored to obtain only the information/data necessary to examine whether the investigation was conducted correctly, to prepare for cross-examination of Agent Daniels, conduct a due process and fair trial investigation into the charges, and to prepare a defense.

### I. Discovery of the technical data and use of Torrential Downpour is material to the defense.

Rule 16, Fed. R. Crim. P., states that a criminal defendant has a right to inspect all documents, data, or tangible items within the Government's

"possession, custody, or control" that are "material to preparing the defense".  Fed. R. Crim. P. 16(a)(1)(E).

Courts have consistently held that evidence is "material" if it is "helpful" to the development of a possible defense.  In *Brady v. Maryland*, the Supreme Court ruled that the suppression by the prosecution of evidence favorable to the accused, upon request for disclosure by the accused, violates due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The Supreme Court further expanded an accused's rights to evidence held by the Government in *Giglio* to include evidence that could be used to impeach Government witnesses.  *Giglio v. United States*, 405 U.S. 150 (1972).

Pursuant to Rule 16, *Brady*, and G*iglio* the Government is required to produce the requested information regarding Torrential Downpour because it is material to the development of Defendant's case.

The Eighth Circuit, following *Brady* and *Giglio*, has held that information is considered "material" if it is "helpful to the defense." *United States v. Vue*, 13 F.3d 1206, *1208 (8th Cir.* 1994).

"The government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16.  Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.C. 2005).

The materiality hurdle is not intended to be a high one.  "Even inculpatory evidence, once disclosed by the government, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence." *United States v. Marshall*, 132 F.3d 63, 67, 328 U.S. App. D.C. 8 (D.C. Cir. 1998).

A defendant must make a showing of materiality and more than a mere conclusory allegation that the requested information is material to preparation of the defense.  *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985).  However, the defendant need only show some abstract logical relationship to the issues in the case."  *United States v. Lloyd*, 992 F.2d 348, 351, 301 U.S. App. D.C. 186 (D.C. Cir. 1993).

If the Government asserts the qualified law enforcement privilege in an attempt to justify withholding certain information that the defense claims is material, the Court must "weigh all relevant factors, including the crime charged, potential defenses, and the possible significance of the [privileged information]" to determine whether the defendant's need for the information outweighs the interests of the public in keeping the information secret.  See *Barnes v. Dormire*, 251 F.3d 767, 770 (8th Cir. 2001).

In the Supreme Court case of *Roviaro v. United States*, 353 U.S. 53, 60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), the government refused to reveal to the defendant the identity of a confidential informant who was involved in a drug transaction that resulted in the defendant's conviction.  The Supreme Court held that where the disclosure of privileged information "is essential the court may require disclosure and, if the Government withholds the information, dismiss the action." *Id*.

If qualified privilege is raised, the Court must consider "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."  *Id*. at 62.  Therefore, the particular circumstances of the case must be examined by the court, focusing on "the crime charged, the possible

defenses, the possible significance of the [privileged information], and other relevant factors."  *Id.*

The requested materials in this case go directly to the critical issues surrounding both the search warrant and Counts One through Eight of the Indictment.  Without access to the technical data behind Torrential Downpour, the defense would be relying upon blind faith regarding the programming of the software, the methodology respecting its use, its error rate, whether it is subject to peer review, and every other aspect.  Beyond knowing that it is a program "developed for law enforcement use," it is otherwise shrouded in secrecy.  In addition to reviewing the search warrant, information on the program is necessary to assess whether the charges are accurate, legitimate and proper, and to adequately prepare for the cross-examination of Agent Daniels.

In *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), the Ninth Circuit Court of Appeals overruled the district court's denial to the defendant of discovery relating to a similar FBI-run computer program in a child pornography distribution case.  At issue in *Budziak* was the FBI computer program EP2P.  *Id.* at 1107.  Utilizing EP2P, two FBI agents downloaded images from an IP address registered to defendant Budziak.  *Id.*  EP2P was described as an enhanced version of a publicly available peer-to-peer file sharing program that allows the FBI to view all files that a particular user on the file sharing network is making available.  *Id*.  Based on the images downloaded using EP2P, the FBI obtained a search warrant and defendant Budziak was ultimately indicted.

Defendant Budziak made several motions to compel the discovery of the technical specifications of  EP2P, as well as a copy of the installable software for a forensic expert to review.  These motions were denied.  At trial the government

presented agents who testified about their investigation using EP2P.  *Id.* at 1108. Defendant Budziak was found guilty at trial.  The Ninth Circuit vacated defendant Budziak's conviction and remanded the case back to the district court because defendant had made the requisite showing that such information was material to the defense of his case:  "Given that the distribution charge against Buzdiak was premised on the FBI's use of the EP2P program to download files from him, it is logical to conclude that the functions of the program were relevant to his defense." *Id.* at 1112.

The Ninth Circuit analogized the issue to dog drug sniff cases where the defense is entitled to discovery on the narcotics detector dog because materials on the dog's qualifications are crucial to the ability to assess the dog's reliability and to conduct effective cross-examination of the dog's handler.  *Id.* at 1112, citing *United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir. 2003).  "Similarly, access to the EP2P software was crucial to Budziak's ability to assess the program and the testimony of the FBI agents who used it to build the case against him."  *Id.* at 1112.

It was not sufficient, the B*udziak* court held, that defendant had the ability to cross-examine the agent at trial, because he was denied the "background material on the software that could have enabled him to pursue a more effective examination." *Id.* Citing the Third and Second Circuits, the Ninth Circuit emphasized that  "a party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pretrial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately."   *Id*., citing *United States v. Liebert*, 519 F.2d 542, 547-48 (3d Cir. 1975); *United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d

Cir. 1970) ("It is quite incomprehensible that the prosecution should tender a witness to state the results of a computer's operations without having the program available for defense scrutiny and use on cross examination if desired.")

*Budziak* is precisely on point in this case. To assess the reliability of Torrential Downpour and effectively cross-examine the witness who used Torrential Downpour to download files from the suspect computer, the defense must have access to the technical information and other material related to this program. This is especially crucial when the charges "against the defendant [are] predicated largely on computer software functioning in the manner described by the government, and the government is the only party with access to that software." *Budziak* at 1113.

Agent Daniels' use of Torrential Downpour has put the software directly at issue. Thus, the fact that Defendant's charges arise out of the Torrential Downpour investigation makes access to this software not only material, but critical to the defense of this case. Its function and use in this case are the evidence underlying eight of the nine counts of the Indictment. Additionally, Defense Counsel is not able to fully examine whether Agent's Daniels' initial online investigation was done correctly, nor whether his subsequent search warrant affidavit was truthful, accurate and based upon information obtained exclusively from the public domain as required by law. As such, the Court should order the production of the requested materials. To deny the request would violate Defendant's right to due process in this matter.

## II. The requested material is not protected by law enforcement privilege.

In this case, the Government is relying on law enforcement privilege to skirt its discovery obligation under Rule 16, *Brady*, and *Giglio*.  The Government has not asserted to Defense Counsel why the law enforcement privilege applies in this case.  More importantly, law enforcement privilege is not a "magic wand" by which the Government can simply cast privilege over an item of discovery without articulating a specific reason that the privilege applies.

Even if the Government raises some reason why the privilege applies in this case, the privilege is not absolute.  The law enforcement privilege was addressed in *Roviaro v. United States*, 353 U.S. 53 (1957), when the Supreme Court ruled that the district court committed reversible error when it allowed the government to refuse to disclose the identity of an undercover informant.  The Supreme Court stated that a "limitation on the applicability of the privilege arises from fundamental requirements of fairness.  In the *Roviaro* case the Supreme Court found that where the disclosure of an informer's identity and the contents of their communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  *Roviaro*, 353 U.S. at 60-61.  The Court must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense."  *Id.* at 62.

There is evidence to believe that the Torrential Downpour program accessed portions of Defendant's computer that were *not* publicly available.  As Ms. Loehrs' affidavit points out, the Government's forensic report of Defendant's computers did not locate any BitTorrent file sharing applications or the files that form the basis of the search warrant.  **Exhibit D**, ¶ 12.  The Government's report also did

not mention that any suspected child pornography was made publicly available and shared through other file sharing applications.  *Id.*

Any claim of privilege to the software must only concern the function related to *where* the government claims the suspect items were found.  What the government claims is "proprietary" or "law enforcement privileged" is that which it hopes to keep secret:  that the software performs an illegal function.  If the items were located in unallocated or deleted space, the government must explain how it alleges that Mr. Gonzales distributed those deleted items if the computer must necessarily have been hacked to locate these items.

The Defendant's right to defend against the serious charges levied against him necessarily and legally outweigh any claim of law enforcement privilege.  Not only does the defense have the constitutional right to determine whether the software was working properly, legally, and operated correctly, but that the software does what the government claims it does.

### III. The Defendant's discovery request is not overbroad.

The defense anticipates that the Government may raise an objection that the requested information is overbroad.  With that in mind, defendant asserts that the request is specific and direct in that it seeks copies of any user manuals, operation manual, instruction manual, documentation help, or other technical manual, or written policies and procedures in the possession of Federal Bureau of Investigation, Internet Crimes Against Children Taskforce, or Innocent Images National Initiative related to Torrential Downpour, and a copy of Torrential Downpour 2.2.1.  This request is not overbroad and will allow Defendant to fully investigate this case.

Any order for disclosure can include appropriate protective measures that would limit the conditions under which Torrential Downpour and its related materials are reviewed.  The protective order could prohibit the dissemination of potential proprietary information beyond the confines of the immediate legal proceedings against Defendant and protect against any concern the Government has about unlawful dissemination of the program.

## IV. Conclusion.

Without being provided technical data with respect to the program, the defense is unable to adequately analyze whether the investigators' preliminary search of Defendant's computer and their subsequent direct connect downloads of potential evidence was in violation of the Fourth Amendment, comports with the claims made in the search warrant, or worse, constituted a form of computer hacking.  Further, without access to the program, the defense is unable to question the government on the only evidence they have to support Counts One through Eight of the Indictment.

The Defendant strongly underscores that it has a good faith belief that the government is using this program to unlawfully search individuals' computer by "hacking" into or modifying a public access program to directly connect to individuals' computers in the confines of their homes.  This "hack" allows government agents to obtain information directly from individual computers that they could not normally obtain through the public use of the program.  Further, interception of the electronic contents of these communications is a violation of the Fourth Amendment, and a violation of the Electronic and Communications Protection Act of 1986.

The only way Defendant will be able to examine these issues is for the Court to order the Government to provide Defendant with the discovery requested herein. Other district courts around the country have granted similar requests under similar circumstances.   In *United States v. Michaud*, 3:15-cr-05351RJB, in the U.S. District Court for the Western District of Washington, the District Court Judge ordered that the Government turn over the source code for the FBI's automated search software based on Defendant's showing of materiality under Rule 16.  See, Cyrus Farivar, Feds may let Playpen child porn suspect go to keep concealing their source code. Ars Technica (Jan. 9, 2017), https://arstechnica.com/tech-policy/2017/01/feds-may-letplaypen-child-porn-suspect-go-to-keep-concealing-their-source-code/.   In response, the Government classified the source code to deny that defendant's request, and the Judge ruled that since the evidence would not be turned over, it and the fruits of the search warrant would be inadmissible. *Id.*

The Government should not be able to hide behind a claim of law enforcement privilege and deny a defendant her or his fundamental rights.  Without the ability to examine this evidence, the Defendant will be denied the right to due process in this matter.

And as set forth earlier, the history of defense motions regarding this software evidences that the government has been aware of the demonstrable flaws inherent in Torrential Downpour.  Therefore, any Affidavit in Support of Search Warrant claiming its reliability would not have been made in good faith.

This assertion that the government has violated the Fourth Amendment places the burden on the government to prove that those rights were not violated by

this software.  Such a blanket claim without a defense opportunity to determine its accuracy is insufficient.

WHEREFORE, Defendant moves this Court to enter an order compelling the Government to disclose all discovery requested relating to the computer program "Torrential Downpour" utilized by investigators in this matter and grant any other relief the Court deems necessary.  In the alternative, Defendant moves that this Court preclude the government from using any evidence obtained using this software, including all evidence obtained pursuant to the search warrant.

Respectfully submitted this 28th day of June, 2018.

_s/ Barbara L. Hull_____
Barbara L. Hull
Attorney for Mr. Espinosa Gonzales

CERTIFICATION

I hereby certify that on this date I electronically filed the attached document under seal with the Clerk's Office using the ECF System for filing.

Courtesy copy with accompanying draft form of Order provided this date to The Honorable David G. Campbell at Campbell_chambers@azd.uscourts.gov.

Copy also provided to Anthony Espinosa Gonzales.

_s/ Barbara L. Hull_____
Barbara L. Hull