ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

GAYLE HELART
California State Bar No. 151861
Email: Gayle.Helart@usdoj.gov
BRETT A. DAY
Arizona State Bar No. 027236
Email: Brett.Day@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-01311-PHX-DGC |
| Plaintiff, | **RESPONSE TO DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDER** |
| vs. | |
| Anthony Espinosa Gonzalez, | |
| Defendant. | |

The United States of America, by and through its attorneys, hereby files this Response to Defendant's Motion to Compel Compliance with Court Order (with its eight exhibits attached) filed April 15, 2019. Exhibits 1-5 relate to the correspondence that has occurred between the parties since this Court issued its order on February 19, 2019, on the topics of parameters of the testing and scheduling the test. Exhibit 6 is a Letter to the U.S. Department of Justice from Human Rights Watch[1] relating to Child Protection System (CPS) software, a software not used in this case. Exhibit 7 is an article dated April 3, 2019, published by

---

[1] The Human Rights Watch website states that it "defends the rights of people in 90 countries worldwide, spotlighting abuses and bringing perpetrators to justice." It is a United States 501(c)(3) charitable corporation.

ProPublica[2], on the topic of challenging proactive law enforcement software, wherein the current case is discussed and Ms. Hull is quoted.  Exhibit 8 is an affidavit by Ms. Loehrs, owner of Loehrs Forensics, dated April 15, 2019, citing the inadequacies of the government's most recent proposal.

The defense requests this Court direct the government to comply with nine different tests.  (See Defense Exhibit 4).

The government believes it *has* reached an agreement with the defense with respect to the portion of proposed testing procedures that will fulfill this Court's order from February 19, 2019.  Specifically out of the nine tests that the defense indicates it wants to run, tests vii, viii, and ix, are focused on the single source "Person A / Person B" argument that Ms. Loehrs raised in her original affidavit, and that was argued by defense in its original motion filed June 28, 2018.  Indeed, even Ms. Loehrs most recent affidavit (See Defense Exhibit 8, ¶ 5) identifies that the three tests (vii, viii, and ix), to which the government agrees, "are conducted for the purpose of corroborating the claims that Torrential Downpour conducts a single source download, correctly logs activity, and does not share files to others on the network."  This context is exactly the heart of this Court's order of the defense being allowed to test the Torrential Downpour software, *i.e.* the single source download argument consistently made in the June 28, 2018, Motion to Compel filing (with Ms. Loehrs affidavit attached), and during the January 31, 2019, evidentiary hearing.  Accordingly, the government agrees to those, and has communicated this to the defense on April 9, 2019.  (See Defense Exhibit 5).  The government is ready to schedule such testing at the FBI (assuming there is an understanding by the parties about the smaller points the parties have discussed, like whether any computer, except one loaded with the Torrential Downpour software, used

---

[2] ProPublica's mission statement on its website states, "To expose abuses of power and betrayals of the public trust by government, business, and other institutions, using the moral force of investigative journalism to spur reform through the sustained spotlighting of wrongdoing."

in the testing may be forensically imaged both before and after the testing and provided to both sides).

What the parties are not in agreement about, however, are the six *other* tests that the defense would like to conduct. The other six, not agreed to by the government, extend beyond this Court's order, and all six require the defense to access the ICAC COPS database, a database of leads used by the law enforcement agents who are licensed to operate law enforcement software, including Torrential Downpour. For example, tests iii and iv (See Defense Exhibit 4, pp. 10-11[3]) are squarely testing whether the software goes into non-shared and deleted spaces, *i.e.* the defense's Fourth Amendment violation argument, which was rejected by this Court. In contrast, the tests which comply with this Court's order and are agreed to by the government, vii, viii, and ix, do not require the ICAC COPS database access.

In the Loehrs Forensics Testing Protocol (see Defense Exhibit 4, p. 6), the defense demands that the government create a unique login allowing Loehrs Forensics access to the live ICAC COPS database. The defense explains that the six tests--not agreed to by the government--all mandate access to the ICAC COPS database (See Exhibit 4, pp. 10-12 outlining the six tests, which are numbered i, ii, iii, iv, v, vi, and Ms. Loehrs affidavit, Exhibit 8).

It is imperative to safeguard the ICAC COPS database information since law enforcement officers nationwide and world-wide use the database for investigations that are regular and ongoing. The ICAC COPS database contains both the list of torrents law enforcement knows to contain child pornography, and the list of leads for those sharing these torrents with the public through the BitTorrent file sharing network. Any exposure to the public of the ICAC COPS database could compromise both current and future criminal child

---

[3] Any reference to the Defense Exhibit 4, the Loehrs Forensics Testing Protocol, will reference the page number of the 18 page document from Loehrs Forensics instead of the page number of the 20 page exhibit that appears as part of the ECF filing.

3

exploitation investigations worldwide. Disclosure of the torrents being investigated by law enforcement would enable child pornography offenders to evade law enforcement detection. Disclosure of the leads contained in the database would enable those offenders associated with the lead to destroy evidence in order to thwart further investigation.

Further, the defense request is a massive expenditure of resources to make the changes Ms. Loehrs requests in order to grant her access to a highly sensitive database that is not necessary to conduct the tests authorized by this Court's order. (See Defense Exhibit 4, p. 8.)

If this Court is inclined to order anything beyond the defense requested tests vii, viii, and ix, the government requests an evidentiary hearing to hear testimony from 1-2 witnesses presented by the government on the salient issues of understanding this database and other relevant issues. Also, the defense may wish to present witness or other testimony. The parties will then present arguments.

Respectfully submitted this 23rd day of April, 2019.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Gayle Helart / Brett A. Day*_____
GAYLE L. HELART
BRETT A. DAY
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of April, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant: Barbara Hull.

*s/ Denise Trimble*
Denise Trimble
U.S. Attorney's Office

4