## AFFIDAVIT OF GERHARD M. GOODYEAR

1. I have over 25 years of experience in law enforcement.  For over 9 years I have specialized in computer crime, and for approximately the past 7 years I have provided instruction to law enforcement officers on the skills necessary to conduct online investigations and computer forensic examinations, including investigations involving peer-to-peer file sharing networks.  Attached to this affidavit as Exhibit 1 is a true and accurate copy of my CV.

2. I am currently a Detective with the Computer Crime Unit of the Indiana County Pennsylvania's Detective Bureau.  I was previously employed as a member of the Pennsylvania State Police Computer Crime Unit until I retired in 2016.  Both Computer Crime Units are responsible for investigations of crimes which occur on the Internet including the distribution of child exploitation material through peer-to-peer networks.

3. I have had multiple discussions with the individuals who created the Internet Crimes Against Children (abbreviated ICAC) system that law enforcement organizations use to identify potential possessors and distributors of child pornography over the BitTorrent peer-to-peer (P2P) sharing network.  I am thus familiar with the creation of this system, the use of the system, and the technical specifications and capabilities of the system, and the BitTorrent network.  I conduct trainings for law enforcement officers on how to utilize the ICAC law enforcement system.  The investigation in this case involved the BitTorrent P2P sharing network.

4. In this report, I will (1) explain how P2P networks, and particularly the BitTorrent P2P network operates; (2) explain how the ICAC law enforcement tool works to identify possible downloading and sharing of child pornography; (3) discuss the evidence provided to me indicating the possible downloading of child pornography over a specific IP addresses; and (4) address certain issues raised by defendant's expert in this case.

### The BitTorrent P2P Network

5. In the 2000's P2P networks first gained notoriety in the music file sharing context with programs such as Napster and Limewire. P2P Networks allow individuals unknown to each other and possibly separated by great distances to share files, such as audio and video files, freely. As described below, the P2P networks match the user seeking a specific file and a user willing to share that file together.

P2P networks often allow users to avoid law enforcement detection because the sharing is done user-to-user as opposed to transiting through a third-party provider (e.g., Google, Yahoo, Microsoft, Facebook, etc.) that could detect child pornography or copyrighted material.

6. The main difference between other P2P networks and BitTorrent is that BitTorrent does not provide a search engine to locate files being shared on the BitTorrent network. Thus, a BitTorrent user must first know how to identify the file(s) he or she seeks to download.  One exception to this is a BitTorrent program called "Tribler".  Tribler is a BitTorrent program which provides a way to search for .torrent files within the program.  Tribler allows users to search for and obtain torrent files from other Tribler users.  Tribler was not used by the defendant in this investigation.

7. In order for a user to download a specific file or files through BitTorrent, the user must first obtain a "torrent" file that is associated with the file(s) (such as a movie or image) the user seeks. The user must first identify an appropriate torrent file, which is typically done from a third-party website such as www.thepiratebay.org. In other words, a user cannot access BitTorrent and run a query (like Google) for the movie Jurassic Park. Instead, the user must first identify a torrent file that contains certain information about the Jurassic Park file, such as the name, size, folder structure, and cryptographic "hash value" (Sha-1) for the data of the file(s) being shared. The torrent itself does not contain the files, only information about the file(s) to be downloaded from the BitTorrent file sharing network.

8. Thus, to download child pornography over the BitTorrent P2P network, a user must first obtain a "torrent file" from an outside website or some other source of that data that associates images or videos of child pornography with a specific torrent.  After the user obtains the torrent associated with the files the user wants to download, the user then would simply open the .torrent file in his or her BitTorrent program that user had installed.

9. Next, the BitTorrent program (such as uTorrent) will initiate contact with a BitTorrent index to locate other BitTorrent users who may have the files, or pieces of the files, referenced in the .torrent file.  A user, through his computer and BitTorrent program, provides the BitTorrent index with certain information, including the IP address the user is using to access the internet and the unique identifier (the Sha-1 infohash) of the .torrent, which contains the instructions on how to download the file(s) that the user is seeking to download and/or share. The infohash is based on the Sha-1 algorithm and therefore is a very reliable way

to uniquely identify every collection of file(s) being shared on the BitTorrent file sharing network.[1]

10. BitTorrent indices are essentially matchmakers.  More specifically, they are computers or servers that identify and match people using BitTorrent with other people using BitTorrent who are looking for or are actively sharing the same file(s) (e.g., all the users sharing or actively looking for the movie *Jurassic Park*) described by the .torrent file. Those matches are called "download candidates." BitTorrent indices match multiple download candidates with each other. The BitTorrent program can then connect to one or many download candidates and request to download the pieces of the files needed.  That process is often referred to as "swarming."  Both the sharing computer and the downloading computer must have the same torrent file (identified through the "infohash") in order for the person seeking the file from other users who possess the file or pieces of the file.  If either computer involved in the sharing / downloading of data did not have matching torrent file (torrents which have the same infohash), the BitTorrent protocol tells us that the downloading of data (the Jurassic Park Movie in this example), is impossible.

11. A BitTorrent index does not initiate contact with a user or "request" information from a user's computer.  To the contrary, a user, through his computer, must voluntarily contact the BitTorrent index and provide the BitTorrent index with the user's IP address and the infohash of the data that the user is seeking to download through the torrent file.  In fact, a user shares that information with the BitTorrent index for the very purpose of 1) learning IPs from which the computer can potentially download data from, and in turn, 2) sharing that users IP address with other unknown users who are seeking pieces of the file(s) shared.

    This user is now in the process of downloading the files for the torrent. It can contact others to download pieces it needs and share the pieces it already possesses.

---

[1] Hash values are an alpha/numerical identifier for a given file, and certain hash values can identify a given file as child pornography.  The Secure Hash Algorithm (SHA-1) was developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA).  The BitTorrent file sharing network uses this hashing algorithm to identify the files being shared on this network.  The odds of the Sha-1 hashing failing (i.e. – taking a known file and finding a different file which produces the same Sha-1 hash) is $2^{160}$, or 1 in 1,461,501,637,330,900,000,000,000,000,000,000,000,000,000,000.

12. When two computers connect regarding a particular torrent file, the initial communication is often referred to a handshake.  BitTorrent allows for a handshake that is in clear text, or one that is encrypted so that only the two connected computers would see the handshaking.  In order to complete an encrypted handshake, the infohash of the torrent is used as an encryption key / decryption key.  Below is an example of an encrypted handshake as reported by Torrential Downpour:

    **2017-01-02 14:23:32 - Attempting to negotiate message stream encryption with remote client**
    **2017-01-02 14:23:32 - Encryption successfully negotiated: post-handshake messages to be sent as plain text**
    **2017-01-02 14:23:32 - Sent encrypted handshake to client**
    **2017-01-02 14:23:32 - Completed handshake with remote client**

    In order for this encrypted handshake to occur, both computers would have to have loaded the torrent into their BitTorrent application, or the encryption would not be possible.  In the above example, because the encryption was successful I know that a user of that computer had the torrent opened by their BitTorrent application.

13. During the handshaking, the sharing computer is required to advise the downloading computer what pieces they have available to share.  Each piece it shares can be requested by any connected computer.  As the pieces are requested and then received, the sha-1 hash value of the piece is confirmed by comparing the sha-1 hash of the data received to the value listed in the .torrent file (the instructions).  Without these instructions (the torrent) being present on both the sharing computer and the downloading computer, the transfer of data (the downloading of pieces of the files) is not possible.  When an investigation occurs and the downloading computer requests a piece of data, that data that was received from the IP address is hashed and the verification is completed by comparing the value to that listed in the torrent.  This data is now confirmed as accurate through this sha-1 hash comparison. I can say with an extremely high degree of certainty that the user in fact was in possession of that data being sent.  In an investigation, this process is completed hundreds or thousands of times.  Only a computer being in possession of the data being requested could be sharing this data.  If the data had been moved or deleted, the data would not be shared.  Any expert could test any give BitTorrent program to confirm that moved or deleted data is no longer available for sharing.  In my review of the defense experts report, no such test was conduct.  Law Enforcements BitTorrent program "Torrential Downpour" would not be required to conduct this test.

**The ICAC Law Enforcement System**

14. The purpose of the ICAC law enforcement system is to identify BitTorrent users who possess or are seeking to possess files related to child exploitation, including child pornography. The ICAC system essentially works the same way that any other individual P2P user seeking to possess or share child pornography identifies a potential source of that child pornography. The system receives the search results of trained law enforcement officers who are searching for the .torrent files that Law Enforcement are familiar with. The Law Enforcement system receives and aggregates the search results so that other Law Enforcement can use the search data of any other Law Enforcement officer.

15. Law Enforcement have identified thousands of .torrent files that are known to be associated with child pornography. Using the ICAC law enforcement system, law enforcement officers can query the BitTorrent indices to determine users who may possess .torrent files used for obtaining the computer files (e.g., images and movies) described by those .torrent files. The ICAC law enforcement system then logs the IP addresses of users that the BitTorrent indices indicate may possess those .torrent files and any of the associated files described by those .torrent files.

16. There are a few minor differences between the ICAC law enforcement system's use of the BitTorrent P2P system and a "peer's" use of the P2P system. With respect to the first difference, ordinary BitTorrent users must obtain a .torrent file before they can seek a specific file (e.g., the *Jurassic Park* movie), which is typically located from internet websites that allow for users to seek those files out through keyword searching. The ICAC law enforcement system, however, maintains .torrent files and hash values for known images of child exploitation and child pornography, so investigators do not have to search outside websites for .torrent files associated with child pornography.

17. The second difference relates to the actual P2P download. Law enforcement can engage in a single-source download (SSD) from a single user. SSD is achieved by only connecting to a single IP address to transfer some or all of the content being shared. No other computer is involved in sharing data to the Law Enforcement Software. Traditionally, BitTorrent seeks to download from many sharing computers to speed up the download times. As a result, a user often will download a file (such as *Jurassic Park*) from multiple users who have the same .torrent and matching file(s). The ICAC system, however, was set up to allow law

enforcement to download the shared content from a single user. This allows law-enforcement in a child pornography investigation to source the shared file to a specific user and establish that the user had the specific child pornography file.

    NOTE - Downloads from a single source happen naturally on the BitTorrent file sharing network on a regular basis, the difference is that the Law Enforcement software ensures that the download occurs from a single sharing program every time which is easily accomplished by only ever communicating with one IP address for the downloads.  The system does not take advantage of downloading from many sharing clients at the same time.

18. The third difference between the ICAC system and a publicly available BitTorrent program is that the law enforcement software does not share any of the content downloaded during an investigation. This is easily accomplished since every piece of data had been downloaded from the IP address being investigated. Since the IP gave us the data we have available to share, they would not need any pieces of data possessed by the Law Enforcement program.  The ICAC system was designed to prevent the sharing of any files because of the illicit nature of the images of child pornography that the investigators are downloading from other users.

19. Based on my years of experience using the ICAC law enforcement system, I have found it reliable. The FBI had the investigative tool independently validated to ensure the method used to download from a single BitTorrent program without sharing was being performed properly. This independent validation was performed at the FBI's direction because the FBI is a client of the ICAC system. The validator was given the program to run and test, as well as the source code for review.

20. The conclusion of the independent validation was that it passed all operational/validation tests.  (The program was found to contain a minor bug involving long file paths which was immediately fixed.  This minor bug was simply that if a file path became too long, the program would stop performing investigations, i.e., the program would shut down if it encountered a file path which was longer than what Windows allows).

21. If the source code, Investigative Software or certain other details about the ICAC system became public, child pornography distributors could find a way to avoid detection from the ICAC system and could render that tool of law enforcement ineffective.   Additionally, the torrent files and the hash values of the files being

investigated could hinder future investigations once this identifier to the illegal files became public.  The infohash becoming public would also allow others to quickly find and download these child pornography files.

### Defense Expert's Analysis

22. I was contacted by the investigator in this case where I was able to do a review of the investigation.  I was provided with the motion filed in this case along with the defense expert's affidavit in this case.

23. The defense expert, Michele Bush, prepared an affidavit which I reviewed and found no information relating to any issues in how the program operates and is therefore difficult to address any issues or concerns.  My review and comments on her affidavit follows:

- Paragraph 6 of the Michele Bush affidavit states in part "According to Detective Erdely, not all "files of interest" are child pornography. However, once a suspect has been identified with a "file of interest", information about that suspect is maintained in the ICACCops system so law enforcement officers can review the historical data".

    Response:  It is true that all of the files we search for being shared on file sharing networks will not meet the statutory definition of child pornography of that state.  We search for files that relate to child exploitation. These files include obscene material, textual stories of child abuse, animations of children, guides on how so abuse children as well as other images that are part of a series which lead to the child pornography.  It is the investigators responsibility to determine what charges are applicable to their investigations and to review the shared material to insure it meets their statutory definition of that charge of "child pornography", "child erotica", etc.

- Paragraph 8 of the Michele Bush affidavit states in part "To my knowledge, the Torrential Downpour software used to identify Mr. Cameron has not been validated or tested using industry standard methods".

Response: Torrential Downpour was validated at the direction of the FBI. While I not have the validation report I have reviewed it which is detailed in my paragraph 19 and 20 above. The software used in this investigation is Torrential Downpour Receptor version 1.37. I can provide a validation report done in a manner which is consistent with the manner and method of testing used by Loehrs Forensics, LLC. In the case United States vs O'Hara (16cr734) testing was done of a BitTorrent program by Loehrs Forensics, LLC. In that case, they presented their test in the form of a report, a video recording of some of the test, a packet capture (recording of data in and out of the computer), and a copy of the virtual machine that performed that test.

It is difficult to know what issues the defense expert has with this software since none were identified in Bush's affidavit. A review of the validation would give the expert all the needed information to confirm:

1. That all the downloaded data came from a single sharing IP address
2. That data shared on BitTorrent network becomes unavailable once sharing is stopped from the BitTorrent program, the data is moved, or the data is deleted.
3. That the log files properly document the investigation which includes but is not limited to:
    a. Dates and times of logged events are accurate
    b. Torrent Infohash being investigated is recorded properly
    c. Suspect IP address properly recorded
    d. Data the suspect computer is reporting to share is recorded
    e. Hash values of downloaded files are correctly recorded
4. That only standard BitTorrent messages are used by the Law Enforcement software that any BitTorrent software would use

   Note – This test will expose data which could harm the investigative process and I would request that any review done by the defense expert be in Government space.

- Paragraph 10 of the Michele Bush affidavit relates that since the Law Enforcement software does not share data back to the network "It is unknown how the BitTorrent protocol affects Torrential Downpour's ability to successfully operate on the network and identify suspects if it is flagged as a leech".

> Response:  The BitTorrent file sharing networks allows for the downloading of material even when the downloading computer fails to share data back.  Any expert could review the protocol to confirm this.  Examples of why BitTorrent has to allow for sharing even when the downloading computer does not share data back to the file sharing network:
> - When a new torrent is created by a BitTorrent users, no other user would have any parts of the data to share.  Therefore, the BitTorrent protocol covers a scenario where data can be downloaded by a BitTorrent user even when they have no data to share back.
> - When only one computer (one source to download) is online sharing the data relating to a specific torrent file, that one sharing computer can share data with the requestor.
>
> If this were not the case, the BitTorrent network would not function properly.

- Paragraph 11 of the Michele Bush affidavit states "It is unknown if Torrential Downpour can identify a client containing only the torrent of suspected child pornography without possessing the content."

    Response:  The Law Enforcement software searches the exact same indices that any other BitTorrent software would search.  The BitTorrent protocol is well documented and public.  Her question relates to how BitTorrent operates and not how Torrential Downpour operates.  Detective Robert Erdely, one of the co-creators of this law enforcement system, was present at the United States Attorney's office in Chicago, IL with Ms. Bush where he conducted a test of how we search the BitTorrent file sharing network.  As Det. Erdely ran this test in her presence, he performed a "Packet Capture" and documented it to allow her to examine the packet capture and have a complete understanding how we and the BitTorrent community search the network.  That evidence was made available to her for her examination.

It is important to note that the law enforcement software searches the same publicly available indices to receive search results and receives the same search results that any other BitTorrent program would receive.  The difference is that we maintain the search results of trained law enforcement officers in order to review these search results at a later time by any user of the law enforcement

system.  Ms. Bush has been provided a demonstration of the law enforcement software and a copy of a "packet capture" of the searching process.  This packet capture was conducted using a publicly available piece of software, "Wireshark".  A packet capture is a recording of all of the computer data sent and received during this searching process, which can be reviewed by an expert to confirm the searching method.  LOEHRS has provided similar packet captures during her testing of a case that LOEHRS cited (US v. O'Hara 16CR0734 in the Northern District of Illinois, Eastern division), showing her knowledge and usefulness of packet captures.

*"Wireshark is the world's foremost and widely-used network protocol analyzer.  It lets you see what's happening on your network at a microscopic level and is the de facto (and often de jure) standard across many commercial and non-profit enterprises, government agencies, and educational institutions.  Wireshark development thrives thanks to the volunteer contributions of networking experts around the globe and is the continuation of a project started by Gerald Combs in 1998."* [2]

Bram Cohen, the architect of the BitTorrent protocol, recommends the use of Wireshark to test BitTorrent applications:
*"When developing a new implementation the Wireshark protocol analyzer and its dissectors for bittorrent can be useful to debug and compare with existing ones."* [3]

24. In paragraph 12 of the defense expert's report she states in part: "However, torrents can be responsible for hundreds, if not thousands, of files created in a single download.  It is unknown which torrents Torrential Downpour searches for and if a torrent responsible for 99 percent legal pornography and one file of suspected child pornography would be identified."

Response:  It is true that one illegal file could be found amongst hundreds or thousands of legal files, however it is still illegal to share the one child pornography file.  Whether it is shared intentionally and/or knowingly is why an investigator would apply for a search warrant to continue the investigation.  Regardless, that is not what happened in this investigation.

25. In paragraph 13 of the defense expert's report she comments that the downloads conducted by the investigator were partially downloaded files.  After the review of

---

[2] Quoted from the Wireshark website at https://www.wireshark.org/
[3] Bram Cohen, The BitTorrent Protocol Specification

>  2 log files produced by the investigative software show that at the beginning of both the investigations, the computer user being investigated was in the process of downloading the files.  By the time the investigation concluded, the computer user being investigated had completed the downloading of both files.  On the BitTorrent file sharing network the person needing to download data from another BitTorrent user can only request the pieces needed.  The sharing computer decides what pieces and when those pieces of data requested would be shared if ever.  Although the investigator was only able to partially download the file from the sharing computer, the sharing computer was in possession of the entire file prior to the conclusion of the investigation.

26. The investigative software used by the investigator in this investigation was "Torrential Downpour Receptor" which does not initiate an investigation by connecting to a client which is sharing suspected "Child Pornography".  The software searches the BitTorrent file sharing network for .torrent files which Law Enforcement are familiar with and relate to child exploitation.  The BitTorrent network will share the IP address of the investigator (as it would with any other BitTorrent program) with other BitTorrent users as a potential download location for the material they seek.  In both investigations, the suspect computer connected to the investigative computer seeking the child pornography.  The suspect computer was seeking pieces of the content that relate to the torrent in question.  Even though the investigator had no pieces to share, the suspect computer shared pieces that were already possessed with the investigator.  This is how content is shared on the BitTorrent file sharing network, that computers seeking to download material from a computer will share the pieces already possessed.  (Note – the Law Enforcement software "Torrential Downpour Receptor" does not share data back to the file sharing network).

## Summary

27. Due to the lack of specificity of what issues were or the specifics of the cases where BUSH found any issues with the program used by Law Enforcement in this case, "Torrential Downpour".

If I knew her exact issues and what specific testing brought to light any issues with the Law Enforcement software, I could attempt to replicate the test to confirm her findings are correct.

My review of the investigation showed that the software worked properly and that the computer being investigated, was in fact sharing the data downloaded.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*
Detective Gerhard M. Goodyear