Barbara L. Hull, #011890
Attorney at Law
2601 North 16th Street
Phoenix, Arizona 85006
(602)412-5800
BarbaraHullLaw@gmail.com
Attorney for Anthony Espinosa Gonzales

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | Case No. 2:17-cr-01311-PHX-DGC |
| Plaintiff, ) | DEFENDANT'S HEARING MEMORANDUM |
| vs. ) | |
| Anthony Espinosa Gonzales, ) | |
| Defendant. ) | |

Defendant Anthony Espinoza Gonzales, by and through counsel, hereby submits this Memorandum in support of his Motion to Compel [Doc. 54] and the hearing currently scheduled for August 16, 2019.   The purpose of this Memorandum is to further detail the Defendant's intended focus for the hearing and to provide the Court additional information obtained since the original briefing regarding certain of the Court's questions.  The defense intends to focus here and at the hearing on the issues addressed and questions posed by the Court [Doc. 59].

To further address the Court's concerns regarding the need to conduct tests three and four (**Question 1**, Doc. 59), all the tests proposed in the Protocol are essential, not only to more fully investigate Fourth Amendment challenges to the tools used here, but also to protect Mr. Gonzales' due process and fair trial rights.

-1-

The tests are necessary to test the accuracy and reliability of these tools, particularly as used in this case.

As outlined previously, without all of the tests proposed, the government will tell the jury that their software, reliable and accurate software, not subject to any independent testing as to its reliability nor subject to challenges that might create reasonable doubt, obtained a single source download from Mr. Gonzales' IP address and obtained the eight images in Counts One through Eight in shared space.

What if the tools access material outside shared space?  What if they access outside shared space and in allocated space?[1]  What if they access outside shared space and outside allocated space?  What if their tools detect only a torrent?  What if they do not conduct a single source download?  And if any of these answers are yes, how and how often does this occur?  Is there reasonable doubt that these tools worked as proclaimed by the government?  Is there reasonable doubt created such that a jury might doubt whether Mr. Gonzales even had those images on his computer, let alone shared them?

To further address the concerns of the Court regarding whether the ICAC COPS database is necessary for testing (**Question 2**, Doc. 59), the Court will note that the government's briefing [Doc. 64] at page 10 states that ICAC COPS "keeps information related to IP addresses that have requested, received, or shared child exploitative .torrent files, not any other kind of lawful or non-lawful .torrent files, and it is populated by Torrential Downpour Receptor, which searches only for child exploitative files."  This statement is not borne out by the evidence.

---

[1] We know in this case that those images were not located in either forensic exam in either shared or allocated space.

Attached as **Exhibit One** is an affidavit of Gerhard Goodyear, an individual associated with and who claims expert familiarity with the subject database and software.  This affidavit was disclosed to the defense in State v. Cameron, Madison County, Illinois Third Circuit Case No. 17-CF-317.   The Court will note at paragraph 23 of that document the following statement:

> It is true that all of the files we search for being shared on file sharing networks will not meet the statutory definition of child pornography of that state.  We search for files that *relate to* child exploitation. These files include *obscene material, textual stories of child abuse, animations of children, guides on how so [sic] abuse children as well as other images that are part of a series which lead to the child pornography*.  It is the investigators responsibility to determine what charges are applicable to their investigations and to review the shared material to insure it meets their statutory definition of that charge of 'child pornography', 'child erotica', etc.

Of additional note is that Mr. Goodyear asserts it is "the investigator's responsibility" to determine which of the images constitute child pornography for charging purposes.   So, by the time the images obtained get back to the investigator, other and more than child pornography is obtained.   That further evidences that the database itself not only contains, but instructs Torrential Downpour to obtain, perfectly legal material.

Attached as **Exhibit Two**, the Court will find excerpts from the sworn testimony of Mr. Goodyear dated June 25, 2019 in that same case wherein he stated the following at pages 113 to 114:

> And what Torrential Downpour does, we have a law enforcement only database, and that database maintains not only approximately 4.2[2]

---

[2] The defense believes the word "million" was left out here.

> *files of interest* that *reference* child pornography, but also approximately 2,500 *torrents of interes*t that additionally *reference* child pornography *in one way or another.* And what our database will do is it will provide IP addresses of users *who have been observed on the network at some point as being interested in one of those torrents of interest.* It'll give those IP addresses to our investigative software, Torrential Downpour, and Torrential Downpour will attempt to make direct connections with those IP addresses.

(Emphasis added.)   So merely showing an interest in one of their torrents of interest gets your IP address onto the ICACOPS database.  Mr. Goodyear goes on at p. 114:

> If a user has *some of* the given payload for that given torrent and we're able to connect to them, then, of course, Torrential Downpour will attempt to download *whatever piece that particular target is in possession of, whether it be one piece, whether it be all pieces*[3]

And more to the point, starting at page 173:

> Q. But if you took that database out and looked at just the function?
> A. They're integral to one another.
> Q. Okay. But do you agree that that database could be taken out for testing purposes?
> A. No.
> Q. Why is that?
> A. Because the software is designed to query those databases. Again, they work all in conjunction with one another.

Therefore one cannot be tested without the other.   ICAC COPS instructs Torrential Downpour to download any one of these 2,500 torrents from the suspect. Because the law prohibits downloading of any child pornography, the test must include a representation of the 2500 torrents, but those that do not contain illegal material for testing purposes, while still exchanging the information

---

[3] This information also undermines the government's claim that the software conducts single source downloads.

between ICAC COPS and Torrential Downpour.  Both must be tested in their native form to insure the integrity and accuracy of the testing.

To further address the Court's concerns regarding cloning of the database (**Question 4**, Doc. 59), a limited logon can be used.  This is comparable to giving someone limited access to your online banking -- you may allow them access to only your checking account information, but they may access no other accounts and may not alter any of your personal information or controls.

Mr. Gonzales respectfully suggests that the government's pushback is about something beyond those reasons articulated. Attached as **Exhibit 4,** the Court will find a pleading filed on November 20, 2017 by the University of Massachusetts in Maricopa County Superior Court Case No. CR2015-119746-001.  The Court will note that that document reveals that, since 2008, UMass has received $440,000.00 annually in grants for one of its faculty members for the software, under a nonexclusive license to the DOJ.  Since 2008, those payments exceed $4.4 million.

The defense is not interested in what the government proposes . . . namely to provide a demonstration of the successes of the tools used.  The only way to insure Mr. Gonzales' constitutional rights are protected is to conduct an industry standard test that, quite frankly, tests for failures of the tools.  The tests must replicate the process followed by Agent Daniels in this case, namely to access and examine the tools that work hand-in-hand, ICAC COPS and Torrential Downpour, in their native form and as they were used in this case.  The defense did not propose a testing Protocol that goes beyond the boundaries of the Court's Order nor beyond that necessary to protect Mr. Gonzales' constitutional rights.

Respectfully submitted this 14th  day of August, 2019.

_s/ Barbara L. Hull_____
Barbara L. Hull
Attorney for Mr. Gonzales

CERTIFICATION

I hereby certify that on this date I electronically filed the attached document with the Clerk's Office using the ECF System for filing and distribution to ECF participants.

Courtesy copy provided this date to The Honorable David G. Campbell at Campbell_chambers@azd.uscourts.gov.

Copy also provided to Mr. Gonzales, Defendant.

Copy also provided to AUSA Gayle Helart.

_s/ Barbara L. Hull_____
Barbara L. Hull